Appeal of **MAGNUS, MABEE &**                              Docket No. 119.
**REYNARD, INC.**

Evidence *held* insufficient to establish a value in 1907 of good will paid in for stock for the purpose of computing invested capital for the years 1917 and 1918.

A debtor of the taxpayer died insolvent and intestate on November 16, 1916, but the condition of his estate was not fully discovered or disclosed until 1917. *Held*, that the debt was discovered to be worthless in 1917 and should have been written off entirely in that year.

Submitted October 10, 1924; decided March 30, 1925.

*Messrs. P. C. Magnus* and *Percy A. Yalden*, for the taxpayer.
*J. D. Foley, Esq.*, for the Commissioner.

Before IVINS, TRAMMELL, and TRUSSELL.

FINDINGS OF FACT

1. The taxpayer corporation was organized in 1907, succeeding to the business of a predecessor corporation known as Magnus & Lauer. The original stock issue of the taxpayer, out of an authorized capital of $400,000, was:

| | |
|---|---:|
| Common stock | $200,000 |
| Preferred stock | 111,000 |
| | 311,000 |

This was issued in exchange for cash and tangible assets to the value of $168,619.69, the difference between which amount and the par value, or $142,380.31, being issued for good will.

2. The books of the predecessor corporation having been destroyed, no evidence of its condition at the time of the transfer to the taxpayer was adduced. A report made to the predecessor company by its accountants as at December 30, 1905, showed:

| | |
|---|---:|
| Total assets (including good will) | $221,556.55 |
| Inventory | 119,057.51 |
| Liabilities (exclusive of stock and surplus) | 142,145.33 |
| Capital stock | 40,000.00 |
| Surplus account | 39,411.22 |
| Profits for period ended Aug. 26, 1901 | 8,163.26 |
| Profits for period ended Aug. 26, 1902 | 3,298.35 |
| Profits for period ended Aug. 26, 1903 | 12,203.64 |
| Profits for period ended Aug. 26, 1904 | 15,093.16 |
| Profits for period ended Aug. 26, 1905 | 17,659.27 |
| | 56,417.68 |
| Average profit for five years | 11,283.54 |

3. In its income-tax returns for 1917 and 1918 the taxpayer claimed, as part of its invested capital, good will to the extent of $142,380.31, which was disallowed in full by the Commissioner.

4. P. C. Magnus, theretofore president of the taxpayer corporation, died on November 16, 1916. At the time of his death he was indebted to the taxpayer, on its books, in the sum of $25,432.09 for advances and overdrafts accumulated over a considerable period. No will was found. His widow qualified as administratrix. No

assets were discovered sufficient to cover preliminary expenses and leave anything for creditors.

5. The taxpayer wrote this debt off its books as uncollectible in 1917, 1918, and 1919, as follows:

| | |
|---|---:|
| In 1917 | $9, 432. 09 |
| In 1918 | 12, 000. 00 |
| In 1919 | 4, 000. 00 |
| | 25, 432. 09 |

These deductions for 1917 and 1918 were disallowed by the Commissioner, who determined a deficiency of $3,216.68 for 1917 and $5,473.60 for 1918. From such determination this appeal was taken.

### DECISION.

The deficiency should be recomputed in accordance with the following opinion. Final determination may be settled on consent or on ten days' notice in accordance with Rule 50.

### OPINION.

IVINS: The taxpayer corporation succeeded to the business of another corporation, known as Magnus & Lauer, in 1907. In taking over that business it issued stock to the par value of $311,000, of which $142,380.31 was stated to be issued for good will. Under section 326 (a) (4) of the Revenue Act of 1918 and section 207 (a) (3), proviso (b), of the Revenue Act of 1917, good will may not be included in invested capital to an amount in excess of its value at the time it was paid in for stock. The first question before us is whether the taxpayer has established that the good will of the predecessor corporation, for which $142,380.31 of stock was issued by the taxpayer, had any value at the time of the transfer. The books of the predecessor corporation have been destroyed by the taxpayer's officers or employees, and the taxpayer has asked us to accept as evidence a report made to Magnus & Lauer by its accountants as of December 30, 1905. Even if we should regard this report as competent evidence of the facts therein appearing, it would not constitute a basis for any finding that the good will of Magnus & Lauer had any value at the time of the transfer to Magnus, Mabee & Reynard, Inc. In the first place, the statements of assets and liabilities are as at a date over a year prior to the transfer, and the end of the last period for which earnings of the predecessor corporation are shown is a year and one-half prior to that transfer. There is no evidence of what may have transpired during the interval. Certainly the net worth of the old corporation, as shown by its books at December 30, 1905, to wit, $79,411.22, is so completely different from the $311,000 of stock ($168,619.69 thereof representing inventory and tangibles) issued in 1907 that the composition of the former can not be made a basis for determining the composition of the latter. Even if we attempted to apply the profits for the periods from August 27, 1900, to August 26, 1905, in lieu of more appropriate figures, for the purpose of showing the good will at the time of the transfer in 1907, they would not justify the allowance of any value to the good will, for the tangible assets were taken into invested capital in 1907 at

$168,619.69, and a reasonable return thereon (at 8 per cent) would be $13,489.58 per annum, a sum upwards of $2,200 in excess of the average net profits for the five-year period shown.

The Commissioner allowed $168,000 invested capital, as at the beginning of business by the new corporation—a sum largely in excess of any claim that could be made for both tangibles and intangibles together on the basis of the accountants' report. And the taxpayer has failed to adduce any evidence that satisfies us that it is entitled to an allowance for good will in addition to the $168,000 invested capital so allowed.

The second point in controversy between the taxpayer and the Commissioner is with respect to a bad debt in the sum of $25,432.09, alleged to have been owing to the taxpayer corporation by its then president, P. C. Magnus, at the time of his death on November 16, 1916. This debt was written off as bad by the taxpayer and deducted in three parts during 1917, 1918, and 1919. The deductions for 1917 and 1918, having been disallowed by the Commissioner, are in controversy.

The taxpayer adduced evidence to the effect that the administratrix of P. C. Magnus was never able to find any assets of his estate, with the exception of a very small bank account, and that the claim by the corporation against the estate was therefore absolutely worthless. The Commissioner does not contend that the debt was not worthless, but relies upon the proposition that it was worthless in 1916 and should have been deducted from the income of that year. The taxpayer proved that the debtor's death occurred so near to the end of the year 1916 and so suddenly that it was impossible for his administratrix to discover the condition of his estate until after the end of that year. Also the administratrix did not become an officer of the taxpayer corporation until February, 1917, and it was only in 1917 that it was possible to discover the true condition of the estate. We think that the debt was ascertained to be worthless in 1917 and all of it should have been deducted in that year, the Commissioner's action in disallowing the deduction of $12,000 in 1918 being proper. The deduction of the full amount of the debt should be permitted in computing the 1917 tax, but proper adjustment should be made in fixing invested capital of subsequent years.